[Cite as *State v. Kahn*, 2017-Ohio-4067.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104360**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL KAHN

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-91-260993-ZA

**BEFORE:** E.T. Gallagher, P.J., Laster Mays, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** June 1, 2017

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
820 West Superior Ave., Suite 800
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Daniel T. Van
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, P.J.:

{¶1} Defendant-appellant, Michael Kahn ("Kahn"), appeals the trial court's judgment classifying him a sexual predator under Megan's Law. He raises two assignments of error:

1. The trial court erred by proceeding with the sexual predator hearing after counsel raised the issue of Kahn's competency.

2. The trial court erred when it classified Kahn as a sexual predator.

{¶2} We find no merit to the appeal and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶3} Kahn has a history of sex crimes convictions. In 1977, he was convicted of attempted gross sexual imposition ("GSI") after he sexually molested a four-year-old girl. In 1980, he was convicted of GSI after sexually molesting a ten-year-old girl. In 1989, Kahn was convicted of felonious assault. It is not clear whether his victim was male or female. Nevertheless, in 1991, he pleaded guilty to rape of an adult woman and was sentenced to 25 years in prison. In 2001, while Kahn was incarcerated, the court ordered a sexual predator classification hearing to determine if Kahn was a sexual predator. At defendant's request, the hearing was continued until after his release in 2016.

{¶4} Dr. Michael Aronoff, of the court psychiatric clinic, evaluated Kahn for the sexual predator hearing in 2016. In his report, Dr. Aronoff reported that Kahn was "actively psychotic" during the clinical interview and appeared "distracted by auditory

hallucinations." Therefore, Dr. Aronoff concluded that the information Kahn provided during the interview was "of questionable validity."

{¶5} Nevertheless, Dr. Aronoff based his opinion on numerous sources outside of the interview. He referred to a record that indicated Kahn was sexually molested as a child. Other records showed that Kahn was born eight weeks prematurely in 1956 and that his mother took medications during pregnancy to prevent miscarriage. He was only two pounds 13 ounces at the time of his birth.

{¶6} At age 17, Kahn began living in a group home operated by the Parent Volunteer Association. His father indicated in a report that Kahn engaged in sexual misconduct and aggressive behavior in the home. During much of his life, Kahn either lived in a group home or in prison. He also received considerable psychological testing, numerous diagnoses, and treatment. In 1982, he was diagnosed with "conduct disorder, undersocialized, non-aggressive, and mild mental retardation." Dr. Aronoff had previously diagnosed Kahn as having pedophilia in 2001, and a psychologist at Mount Sinai Hospital diagnosed him with pedophilia in 1980. Kahn had also been diagnosed with various depressive disorders, personality disorders, developmental disorders, and schizoaffective disorder among other diagnoses.

{¶7} Based on "subjective and objective measures of sexual interest," Dr. Aronoff concluded that Kahn "has a significant sexual interest in young girls aged 8 to 10 years" and that he "appears to have a sexual interest in females aged 2 to 4 years, adolescent males and females, and adult females."

**{¶8}** At the sexual predator hearing, defense counsel raised concerns about Kahn's competency. The state argued that because sexual predator classifications are civil in nature, the court was not required to hold a hearing to determine Kahn's competency. The trial court agreed and proceeded without a competency hearing. At the conclusion of the hearing, the court found, by clear and convincing evidence, that Kahn was a sexual predator.

**{¶9}** Kahn now appeals the trial court's judgment.

## II. Law and Analysis

### A. Competency

**{¶10}** In the first assignment of error, Kahn argues the trial court erred by proceeding with the sexual predator hearing after his trial counsel raised concerns regarding his competency.

**{¶11}** A criminal defendant may not stand trial if he is deemed legally incompetent. *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995). R.C. 2945.37(B), which governs a criminal defendant's competency to stand trial, provides that a common pleas court must hold a competency hearing "[i]n a criminal action" if the prosecutor or defense counsel raises the issue of competency.

**{¶12}** However, sexual predator hearings are civil in nature, not criminal. *State v. Jones*, 93 Ohio St.3d 391, 754 N.E.2d 1252 (2001) (Lundberg Stratton, J., concurring in part, dissenting in part); *State v. Kendrick*, 10th Dist. Franklin No. 98AP-1305, 1999 Ohio

App. LEXIS 4622 (Sept. 30, 1999).  Because sexual predator hearings are civil proceedings, R.C. 2945.37, which applies only to "criminal actions," is inapplicable.

{¶13} Kahn nevertheless argues that his right to due process required the court to hold a competency hearing and cites *State v. Chambers*, 151 Ohio App.3d 243, 2002-Ohio-7345, 783 N.E.2d 965 (11th Dist.), to support his argument.  In *Chambers*, the Eleventh District concluded that a convicted sex offender has the right to a competency hearing before being classified as a sexual predator under former R.C. Chapter 2950.  In reaching this conclusion, the *Chambers* court analogized sexual predator hearings to probation and parole violation hearings and noted that the United States Supreme Court held that a defendant's due process rights at such hearings include the right to confront and cross-examine adverse witnesses.  *Id*. at ¶ 10, citing *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 782,   93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

{¶14} The *Chambers* court reasoned that a defendant's ability to be heard and confront adverse witnesses "may be rendered null if the defendant is not competent to understand and to participate in or to assist counsel in participating in the proceedings." *Id*. at ¶ 10, quoting *State v. Qualls*, 50 Ohio App.3d 56, 58, 552 N.E.2d 957 (10th Dist.1988) (holding that the defendant was, as a matter of due process, entitled to a competency hearing before his probation revocation hearing.).

{¶15} We find the *Chambers* court's reliance on cases discussing the scope of a defendant's due process rights in probation and parole violation cases is misplaced in the

context of sexual predator hearings.   As the United States Supreme Court explained in

*Morrissey*:

> Whether any procedural protections are due depends on the extent to which
> an individual will be "condemned to suffer grievous loss." *Joint
> Anti-Fascist Refugee Commt. v. McGrath*, 341 U.S. 123, 168 [71 S.Ct. 624,
> 95 L.Ed. 817] (1951) (Frankfurter, J., concurring), quoted in *Goldberg v.
> Kelly*, 397 U.S. 254, [90 S.Ct. 1011, 95 L.Ed.2d 287] (1970). The question
> is not merely the "weight" of the individual's interest, but whether the
> nature of the interest is one within the contemplation of the "liberty or
> property" language of the Fourteenth Amendment.   *Fuentes v. Shevin*, 407
> U.S. 67 [92 S.Ct. 1983, 32 L.Ed.2d 287] (1972).
>
> Once it is determined that due process applies, the question remains what
> process is due.   It has been said so often by this [c]ourt and others as not to
> require citation of authority that due process is flexible and calls for such
> procedural protections as the particular situation demands.   "Consideration
> of what procedures due process may require under any given set of
> circumstances must begin with a determination of the precise nature of the
> government function involved as well as of the private interest that has been
> affected by governmental action."   *Cafeteria & Restaurant Workers Union
> v. McElroy*, 367 U.S. 886, 895 [81 S.Ct. 1743, 6 L.Ed.2d 1230] (1961).
>
> To say that the concept of due process is flexible does not mean that judges
> are at large to apply it to any and all relationships.   Its flexibility is in its
> scope once it has been determined that some process is due; it is a
> recognition that not all situations calling for procedural safeguards call for
> the same kind of procedure.

{¶16} In holding that a parolee's due process rights include the right to confront

adverse witnesses, the *Morrissey* court balanced the state's interest in protecting the

public from future crime against the parolee's constitutional right to liberty as guaranteed

by the Fourteenth Amendment.   Obviously, revocation of parole or probation results in

the defendant's loss of liberty.   Such is not the case in sexual predator proceedings, and

Ohio Supreme Court precedent suggests the convicted sex offender's right to due process

is more limited than that of a parole or probation violator. *See State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110.

**{¶17}** In *Ferguson*, the court held, in part, that retroactive application of the sexual classification statute did not violate the defendant's constitutional protection against the enactment of ex post facto laws because the sexual classification statute was remedial rather than punitive. *Id*. at ¶ 29. In balancing the effect a sexual predator classification would have on the convicted sex offender against the state's interest in protecting the public, the *Ferguson* court noted that former R.C. Chapter 2950 was "replete with references to the legislature's intent to 'protect the safety and general welfare of the people of this state' and to 'assur[e] public protection.'" *Id*., quoting former R.C. 2950.02(B). Moreover, the court explained:

> As we have before, we acknowledge that R.C. Chapter 2950 may pose significant and often harsh consequences for offenders, including harassment and ostracism from the community. [*State v.*] *Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 46 (Lanzinger, J., dissenting); [*State v.*] *Cook*, 83 Ohio St.3d 404, 413, 700 N.E.2d 570 [1998]. We disagree, however, with Ferguson's conclusion that the General Assembly has transmogrified the remedial statute into a punitive one by the provisions enacted through S.B. 5.
>
> \* \* \*
>
> As an initial matter, we observe that an offender's classification as a sexual predator is a collateral consequence of the offender's criminal acts rather than a form of punishment per se.
>
> \* \* \*
>
> We conclude that the General Assembly's purpose for requiring the dissemination of an offender's information is the belief that education and notification will help inform the public so that it can protect itself.

"Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation." *Smith* [*v. Doe*], 538 U.S. 84, 99, 123 S.Ct. 1140, 155 L.Ed.2d 164 [2003].

*Ferguson* at ¶ 32-38. Thus, the *Ferguson* court found that the state's need to protect the public from convicted sex offenders whose recidivism rates are known to be "alarming" outweighed the "significant and often harsh consequences for offenders" such that sex offenders at classification hearings are entitled to less due process protection than defendants facing criminal penalties. *Id*. at ¶ 32, 35, and 38. Because sexual predator hearings are civil and remedial in nature, and R.C. 2945.37 only mandates a competency hearing in "criminal actions," the trial court was not required to hold a competency hearing before proceeding with Kahn's sexual predator hearing.

{¶18} In *Chambers*, the trial court determined the offender was incompetent and classified him as a sexually oriented offender, by default, even though the trial court had determined he was a sexual predator. Rather than restoring Chambers to competency to ensure that he understood the proceedings and the reporting requirements of his classification, the court classified him as a sexually oriented offender because "there is no evidence that an individual convicted of a sexually oriented offense could present at a hearing that would cause a trial court to determine that he is not a sexually oriented offender." *Chambers* at ¶ 14, citing *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, ¶ 15.

{¶19} A sexual classification by default does not solve the problem of the offender's incompetence. Admittedly, there is little the offender can do to defend

against the statute's automatic classification of sexually oriented offenders. However, a classification by default fails to achieve the legislature's intent to protect the public from future crime if the incompetent offender fails to register a change of address because he did not understand his reporting requirements. And if the offender is a sexual predator, then more frequent reporting is necessary to protect the public than is required for sexually oriented offenders. Unfortunately, former R.C. Chapter 2950 does not address the rare, but real, circumstances of this case. Nevertheless, because former R.C. Chapter 2950 is civil and remedial in nature, the court was not required to hold a competency hearing before proceeding with the sexual predator hearing in this case.

{¶20} We are cognizant that Civ.R. 17(B) provides that "when a minor or incompetent person is not otherwise represented in an action, the court shall appoint a guardian ad litem or shall make such other order as it deems proper for the protection of such * * * incompetent person." However, the trial court's obligation to appoint a guardian ad litem only arises when the incompetent person is not otherwise represented. *Kendrick*, 10th Dist. Franklin No. 98AP-1305, 1999 Ohio App. LEXIS 4622 (Sept. 30, 1999); *Mihal v. Sargis*, 8th Dist. Cuyahoga No. 49532, 1985 Ohio App. LEXIS 8792 (Oct. 3, 1985).

{¶21} Kahn was represented by competent counsel at the sexual predator hearing. Effective assistance of counsel is sufficient to protect the offender's interests at a sexual predator hearing. Therefore, Kahn's right to due process was not violated by the court's failure to hold a competency hearing before the sexual predator proceedings.

**{¶22}** Accordingly, the first assignment of error is overruled.

## B. Sexual Predator Classification

**{¶23}** In the second assignment of error, Kahn argues the trial court erred when it classified him as a sexual predator.

**{¶24}** In 1996, the General Assembly enacted Ohio's version of the federal "Megan's Law" legislation, which created a comprehensive registration and classification system for sex offenders. *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 6-7. Under Megan's Law, a sentencing court was required to determine whether a sex offender fell into one of three classifications (1) sexually oriented offender, (2) habitual sex offender, or (3) sexual predator. *Cook*, 83 Ohio St.3d 404, 407, 700 N.E.2d 570 (1998).

**{¶25}** In 2007, the Ohio General Assembly enacted the Adam Walsh Act, which imposed a three-tiered sexual offender classification system. *Bodyke* at ¶ 20. Thus, sexual predator hearings were no longer necessary under the Adam Walsh Act, since classifications were automatically determined based on the offense committed. *Id.* However, the Ohio Supreme Court held that the Adam Walsh Act could not be applied retroactively to offenders who committed their offenses prior to the act's effective date, January 1, 2008. Therefore, because Kahn committed the rape offense that triggered the

sexual predator hearing prior to January 1, 2008, Megan's Law is the applicable classification system. *Id*.

**{¶26}** Under Megan's Law, former R.C. 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." The state has the burden of proving, by clear and convincing evidence, that the offender was a sexual predator. *State v. Hendricks*, 8th Dist. Cuyahoga No. 102365, 2015-Ohio-3035, ¶ 13.

**{¶27}** In determining whether an offender is a sexual predator under Megan's Law, former R.C. 2950.09(B)(3) instructs the court to consider (1) the age of the offender and criminal record, (2) the victim's age, (3) whether the offense involved multiple victims, (4) whether the offender used drugs or alcohol to impair the victim, (5) if the offender has previously been convicted of any criminal offense, (6) whether the offender participated in any available program for sex offenders, (7) whether the offender demonstrated a pattern of abuse or displayed cruelty toward the victim, (8) any mental illness or disability of the offender, and (9) any other behavioral characteristics that contribute to the sex offender's conduct. *See* former R.C. 2950.09(B)(3)(a)-(j).

**{¶28}** Although the court must consider the factors set forth in former R.C. 2950.09(B), it is not required to make an individual assessment of those factors, nor is any one factor or combination of factors dispositive. *State v. Caraballo*, 8th Dist. Cuyahoga No. 89757, 2008-Ohio-2046, ¶ 8.

{¶29} And since sexual predator classifications under Megan's Law are considered civil in nature, the civil manifest weight of the evidence standard of review applies on appeal. *State v. Nelson*, 8th Dist. Cuyahoga No. 101228, 2014-Ohio-5285, ¶ 8. Under the manifest weight of the evidence standard, this court must give "great deference" to the trial court's findings of fact. *Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 26. Judgments supported by competent, credible evidence must be affirmed.

{¶30} Kahn argues there was no evidence demonstrating that he was likely to engage in future sexual misconduct because all the evidence presented was stale. Therefore, he argues, the sexual predator classification was against the manifest weight of the evidence.

{¶31} The trial court relied on evidence presented by Dr. Aronoff and determined that the following factors weighed in favor of adjudicating Kahn a sexual predator (1) Kahn's criminal history, (2) the victim's ages, (3) the fact that there were multiple victims, and (4) the nature of the conduct. The court recounted other incidents in which Kahn chased female victims, but his actions in those instances did not result in criminal prosecution. Most of his victims were children, many under 14 years of age.

{¶32} The court also noted that Kahn admitted he was caught attempting to sneak under a bathroom stall to view a handicapped child using the toilet when he was a sanitation worker. Although Kahn was fired as a result of this incident, there were no formal legal charges.

**{¶33}** The trial court also considered Kahn's score on the STATIC-99 test, which indicated that he had a moderate to high-risk of reoffending, despite his age. Kahn's responses to the ABEL Assessment indicated that he began engaging in inappropriate sexual conduct when he was 13 years of age and that the conduct continued until he was sentenced to 25 years in prison for rape when he was 32 years of age. Although the ABEL Assessment was completed in 2001, Dr. Aronoff was able to complete a revised STATIC-99, which indicated a "moderate high-risk * * * of reoffending." Although the ABEL Assessment may have been stale if considered by itself, when considered with the updated STATIC-99 score, the two tests indicate a likelihood that Kahn will reoffend.

**{¶34}** Finally, the court considered the fact that Kahn had not completed any sexual offender programs, suffers from mental illness and disability, and admitted being aggressive toward children. The court also referenced the fact that Kahn was sexual and aggressive towards children in the group home where he lived as an adolescent.

**{¶35}** Dr. Aronoff's opinions and Kahn's test scores, considered with the facts of each of Kahn's cases and his history of mental illness and sexual aggression, support the court's determination that Kahn should be classified as a sexual predator.

**{¶36}** Therefore, the second assignment of error is overruled.

**{¶37}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS;
ANITA LASTER MAYS, J., DISSENTS WITH SEPARATE OPINION

ANITA LASTER MAYS, J., DISSENTING:

{¶38} I respectfully dissent from the majority's determination that defendant-appellant, Michael Kahn ("Kahn"), was correctly determined to be a sexual predator where the record shows that he was incompetent at the time of the trial court's hearing. Without restoring Kahn to competency, I would, by default, classify him as a sexually oriented offender.

I.    **Background and Facts**

{¶39} In 1991, Kahn pled guilty to one count of rape with specifications and was sentenced to a term of 5 to 25 years. On April 24, 1997, the Department of Rehabilitation and Correction ("DRC") contacted the court, recommending classification of Kahn as a sexual offender pursuant to H.B. 180 (R.C. Chapter 2950, as amended in

1996, commonly known as "Megan's Law"). The court stated it "declines to make a finding in this matter and further finds the application of House Bill 180 to this defendant to be violative of the Ex Post Facto Clause of the U.S. Constitution and the Retroactive Clause of the Ohio Constitution."

{¶40} On January 17, 2001, the state directed the warden of the Southern Correctional Institution to send an H.B. 180 packet to the assistant Cuyahoga County prosecutor, including the master file, all records prepared during his incarceration, psychology and psychiatry reports, and security classifications. The court ordered, at the request of Kahn's attorney, a general psychiatric evaluation, sexual predator evaluation and exam, and an intellectually disabled offender exam. Kahn's motion to stay the proceedings was granted and his motion to dismiss was denied. The court ordered the DRC to notify the court six months prior to Kahn's parole hearings.

{¶41} On January 29, 2016, the state filed a motion for a sexual predator classification hearing. The DRC failed to notify the court six months prior to Kahn's release date. On February 3, 2016, the trial court scheduled the H.B. 180 hearing and referred Kahn for examination. The entry notes that Kahn "has completed his sentence."

{¶42} The hearing was held on March 28, 2016. Defense counsel voiced serious reservations about Kahn's competence after several meetings with him. Kahn indicated to counsel in the court's presence that he attended Westminster college and was well versed in criminal law. Counsel also stated that Kahn was unable to understand the proceedings or the purpose. He was unable to assist counsel in preparing for his defense.

Counsel added that he had never seen anyone "this severely mentally challenged and handicapped" in his 27 years of practice.

**{¶43}** Defense counsel offered that his concerns were supported by the 2016 report of Dr. Aronoff ("Dr. Aronoff"), who also performed the 2001 evaluation. Dr. Aronoff determined that Kahn was psychotic during the interview, and distracted by auditory hallucinations. Dr. Aronoff was unable to perform a current present ABEL assessment due to the psychosis, a test to measure Kahn's potential sexual interest in light of his pedophilic disorder history.

**{¶44}** The state countered that the H.B. 180 proceeding under Megan's Law is a civil proceeding. As a result, the court was statutorily obligated to conduct a sexual predator classification hearing within one year of Kahn's release from prison. Kahn's counsel acknowledged the proceeding was civil, but argued that, due to incompetence, Kahn's inability to understand the nature of the proceeding and the ramifications for violating would subject him to a criminal violation and imprisonment.

**{¶45}** I agree that the trial court's actions will subject Kahn to an inevitable criminal violation and imprisonment because he is unable to comprehend the proceedings or to comply with the reporting requirements. Additionally, this quick action was an attempt to fix the state's error in failing to notify the trial court six months prior to Kahn's parole hearing to allow time for the court to pursue the possibility of restoring Kahn to competency prior to a hearing. I believe that this action violates Kahn's rights as well, as the majority's determination does nothing to protect the public from future crime.

## II.    Analysis

**{¶46}** Ohio established sex offender registration in 1963 under "former R.C. Chapter 2950, 130 Ohio Laws 669." *State v. Cook,* 83 Ohio St.3d 404, 406, 1998-Ohio-291, 700 N.E.2d 570.  R.C. Chapter 2950 was revised to incorporate elements of Megan's Law ("Ohio Megan's Law"):

> [I]n 1996, the General Assembly rewrote R.C. Chapter 2950 as part of Am.Sub.H.B. No. 180 ("H.B. 180"), 146 Ohio Laws, Part II, 2560, 2601. H.B. 180 was passed in May 1996 and signed by Governor Voinovich in July 1996.  Some provisions became effective January 1, 1997, including the classification provision, R.C. 2950.09.  Section 3 of H.B. 180, 146 Ohio Laws, Part II, 2668.  Other provisions, such as the registration and notification requirements, R.C. 2950.04, 2950.05, 2950.06, 2950.10, and 2950.11, became effective July 1, 1997.  Section 5 of H.B. 180, 146 Ohio Laws, Part II, 2669.

*Id.*  The expressed legislative intent was "to protect the safety and general welfare of the people of this state."  R.C. 2950.02(B).

**{¶47}** The major components of Ohio Megan's Law were: classification registration and community notifications.  There were three classification categories: sexually oriented offenders, habitual sexual offenders, and sexual predators.  R.C. 2950.09.  Registration requirements for sexual offenders was annually for ten years, habitual offenders was annually for 20 years, and predators must register every 90 days for life.  Failure to comply with registration and verification was a felony where the underlying offense was a felony.  R.C. 2950.06(G)(1) and 2950.99.  *Cook* at 408.

**{¶48}** *Cook* involved a constitutional challenge to the retroactive application of Megan's Law, alleging that it violated Article II, Section 28 of the Ohio Constitution

("Retroactivity Clause"), and Article I, Section 10 of the United States Constitution ("Ex Post Facto Clause"). The court determined that there was no constitutional issue because R.C. Chapter 2950 is a civil, remedial promulgation, and is not punitive or criminal in nature. *Cook* at 417.

{¶49} R.C. 2945.37 governs incompetent defendants in criminal proceedings. Thus, the question is what protection is available to a defendant who would possibly be deemed mentally incompetent to stand trial or unable to comprehend the nature of the proceedings against him in a Megan's Law civil sex offender classification hearing? There are two lines of cases on this issue.

{¶50} Kahn advocates our adoption of the rationale advanced by the Eleventh District Court of Appeals in *State v. Chambers*, 151 Ohio App.3d 243, 2002-Ohio-7345, 783 N.E.2d 965 (11th Dist.). Chambers pled guilty to one count of kidnapping (R.C. 2905.01); a second-degree felony, and three counts of gross sexual imposition (R.C. 2970.02); felonies of the third degree.

{¶51} On August 30, 2001, the trial court ordered a psychiatric evaluation of Chambers and held a sexual offender classification hearing per Megan's Law. The examining doctor found that Chambers, now 83 years old, was unable to understand the nature of a sexual offender classification hearing. Though finding Chambers incompetent, the trial court did not hold a hearing, but proceeded to classify Chambers as a sexually oriented offender, though the trial court observed that Chambers would not be

able to comply with the registration requirements due to his mental incompetence. *Id.* at ¶ 4.

{¶52} On appeal, Chambers argued that his due process rights had been violated, analogizing the offender hearing to probation revocation hearings where a defendant has a right to be heard and confront witnesses. *Id.* at ¶ 7. *See, e.g.*, *State v. Holman*, 8th Dist. Cuyahoga No. 100468, 2014-Ohio-3908, ¶ 8. ("In a probation hearing, a defendant has a due process right to a competency hearing when there is a substantial basis for the suggestion that appellant is incompetent.") The court agreed that the legislature's election to promulgate R.C. 2945.37 governing competence in criminal trials does not mean that the due process right does not exist otherwise. *Id.* at ¶ 9.

{¶53} The *Chambers* court gave due consideration to the approach of the Tenth Appellate District in *State v. Kendrick*, 10th Dist. Franklin No. 98AP-1305, 1999 Ohio App. LEXIS 4622 (Sept. 30, 1999), the case relied upon by the state here. *Kendrick* also entertained the question of the applicability of R.C. 2945.37 to a sexual classification hearing but held that, due to the civil nature of the matter, R.C. 2945.37 did not apply.

{¶54} *Chambers* agreed with the civil categorization of the hearing, but determined that

> [W]e do not agree with the implication of the Tenth Appellate District's analysis [in *Kendrick*] that a defendant's right to be heard and to confront witnesses is not impinged by his lack of competency outside the context of a criminal trial. The fact that the Ohio legislature has chosen to enunciate the right to a competency determination in a criminal trial does not preclude the possibility of that right existing in other circumstances.

*State v. Chambers*, 151 Ohio App.3d 243, 2002-Ohio-7345, 783 N.E.2d 965, ¶ 9

(11th Dist.).

{¶55} The *Chambers* court focused on the due process considerations afforded by the United States Supreme Court, and other states, including Ohio, for probation revocation and parolees, applying standards applicable to criminal hearings.[1]  *Chambers* at ¶ 10-12.  All of the considered cases determined that the affected defendant was entitled to due process rights, which could not be exercised where a defendant is incompetent.  *Id.*

{¶56} Reiterating the civil nature of R.C. Chapter 2950, the court shifted its focus to R.C. 2950.09(B)(2)'s provision that

> "[T]he offender * * * shall have an opportunity to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witnesses and expert witnesses regarding the determination as to whether the offender * * * is a sexual predator."  These are the same rights that courts, in the context of parole and probation revocation hearings, have recognized cannot be effectively exercised if the defendant is incompetent. We are in accord with those jurisdictions that have held that a defendant's right to testify, present evidence, and confront adverse witnesses is effectively rendered meaningless by the defendant's incompetency.  In view of the foregoing, we hold that the trial court's decision to proceed with appellant's sexual predator hearing, after it found that appellant was incompetent, was a violation of the due process rights granted to appellant in R.C. 2950.09.

---

[1]  *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *State v. Qualls*, 50 Ohio App.3d 56, 58, 552 N.E.2d 957 (10th Dist.1988); *Commonwealth v. Megella*, 268 Pa. Super. 316, 408 A.2d 483, 486 (1979); *Pierce v. Dept. of Social & Health Servs.*, 97 Wn.2d 552, 646 P.2d 1382, 1384 (Wash.1982); *State ex rel. Vanderbeke v. Endicott*, 210 Wis.2d 502, 563 N.W.2d 883, 888 (Wis.1997); and *People v. Davis*, 127 Ill. App.3d 49, 468 N.E.2d 172 (Ill.1984).

*Chambers* at ¶ 13.

**{¶57}** The court then determined that there was, in fact, a way to balance the due

process concerns with the need to protect the community and related safety concerns of

R.C. Chapter 2950. The court relied on *State v. Hayden,* 96 Ohio St.3d 211,

2002-Ohio-4169, 773 N.E.2d 502, ¶ 15, which held that the classification of a defendant

as a sexually oriented offender does not require a hearing:

> Once an individual is convicted of a sexually oriented offense, he is
> automatically classified as a sexually oriented offender and must comply
> with the registration requirements of R.C. 2950.04 [*Holden* at ¶ 15]. The
> *Hayden* court observed that there was no evidence that an individual
> convicted of a sexually oriented offense could present at a hearing that
> would cause the trial court to determine that he was not a sexually oriented
> offender. *Id.*

*Chambers,* 151 Ohio App.3d 243, 2002-Ohio-7345, 783 N.E.2d 965, ¶ 14.

**{¶58}** The *Chambers* court engaged in a colorful commentary that bears repeating

here:

> This court is most aware of the concept that an intermediary appellate court
> is bound to apply the holdings and policies enunciated by its supreme court
> in the name of stare decisis. However, an occasional non-deferential
> rhetorical exercise may be good for the soul without casting what might be
> characterized as an animadversion. Query — Is it not a disharmonious
> paradox when an individual who is legally incompetent cannot during such
> state be tried for a crime; and that one who is competent when convicted
> and sentenced may not be the subject of the death penalty if incompetence
> ensues; yet, as a result of a proclamation "by operation of law," the same
> incompetent individual may be anointed with a negative status without
> benefit of clergy or a meaningful substantive hearing?
>
> Perhaps even more puzzling is the evident resulting conundrum as to how
> an individual in the throes of Alzheimer's disease would functionally be
> able to comply with the annual registration requirements for a period of ten
> years as set forth in R.C. 2950.07(B)(3). Again, ours "is not to reason

why" why some logic defies logic, but to dutifully accept the syllogism. We will await the intervention of the serendipity singers and an applicable Polish proverb.

Applying the holding of *Hayden* to the facts of the instant case, we conclude that although the trial court erred in proceeding with a sexual predator hearing after finding appellant incompetent, it did not err in finding that appellant was a sexually oriented offender, since appellant's guilty plea to the three counts of gross sexual imposition automatically conferred upon him the status of sexually oriented offender.

*Chambers* at ¶ 15-17.

**{¶59}** This is a case of first impression for this court, and the issue has not been addressed by the Ohio Supreme Court. Until guidance is provided via the judiciary or legislature to resolve the current dichotomy, I find, under the narrow circumstances of this case, that the rationale adopted in *Chambers* and *Hayden* is the appropriate analysis. Kahn's guilty plea to one count of rape "automatically conferred upon him the status of sexually oriented offender." *Id.* at ¶ 17.