[Cite as *State v. Gray*, 2021-Ohio-844.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 109506 |
| v. | : | |
| GARY GRAY, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 18, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-07-503576-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mary M. Frey, Assistant Prosecuting Attorney, *for appellee.*

Joseph V. Pagano, *for appellant.*

MARY J. BOYLE, A.J.:

{¶ 1} Defendant-appellant, Gary Gray, appeals the trial court's judgment classifying him as a sexual predator under Megan's Law, originally enacted in

Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560 ("H.B. 180"). He raises one assignment of error for our review:

> The court erred by adjudicating appellant a sexual predator in the absence of sufficient evidence that would establish by clear and convincing evidence the likelihood to engage in the future in a sexually oriented offense.

{¶ 2} Finding no merit to his appeal, we affirm.

## I. Procedural History

{¶ 3} In June 2008, Gray was convicted of 38 counts of sexual battery in violation of R.C. 2907.03(A)(9), third-degree felonies, one count of gross sexual imposition in violation of R.C. 2907.05(A)(1), a fourth-degree felony, and one count of importuning in violation of R.C. 2907.07(B), a fifth-degree felony. The trial court sentenced him to 12 years and 6 months in prison and classified him as a Tier III sex offender under the Adam Walsh Act.

{¶ 4} Gray appealed, arguing that the trial court considered "inappropriate and prejudicial matters outside the record when imposing" his sentence. *State v. Gray*, 8th Dist. Cuyahoga No. 91806, 2009-Ohio-4200, ¶ 5. This court affirmed the judgment of the trial court. *Id.* at ¶ 15.

{¶ 5} In 2007, the Ohio General Assembly enacted the Adam Walsh Act, which imposed a three-tiered sexual offender classification system. *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 20. Sexual predator hearings were no longer necessary under the Adam Walsh Act because classifications were automatically determined based on the offense committed. *Id.*

The Ohio Supreme Court held, however, that the Adam Walsh Act could not be applied retroactively to offenders who committed their offenses prior to the act's effective date, January 1, 2008. *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, syllabus.

{¶ 6} On September 4, 2016, the state moved for the trial court to hold a H.B. 180 hearing, arguing that Gray should be reclassified as a sexual predator under Megan's Law. The trial court held the hearing in January 2020. After considering the exhibits and arguments, the trial court found that Gray was likely to commit a sexually oriented offense in the future and classified him as a sexual predator. It is from this judgment that Gray now appeals.

## II. Megan's Law

{¶ 7} In his sole assignment of error, Gray maintains that the trial court erred in finding that there was clear and convincing evidence that he was likely to commit a sexually oriented offense in the future.

{¶ 8} The parties agree that because Gray committed his crimes before January 1, 2008, he is subject to the sexual offender classification system under former R.C. Chapter 2950, et seq., originally known as H.B. 180 or "Megan's Law." *See State v. Kahn*, 8th Dist. Cuyahoga No. 104360, 2017-Ohio-4067, ¶ 25 (offenders who committed their offenses prior to January 1, 2008 are subject to the sexual-offender classification system and hearing requirements under "Megan's Law").

{¶ 9} Under Megan's Law, there are three classifications for sexual offenders: (1) sexually oriented offender, (2) habitual sex offender, and (3) sexual

predator. The main distinctions between the classifications are the reporting requirements. Sexually oriented offenders must register their address annually for 10 years. Habitual sex offenders must register their address annually for 20 years. And sexual predators must register their address every 90 days for life. *See* former R.C. 2950.04(C)(2); former 2950.06(B)(1) and (2); and former 2950.07(B)(1) and (2).

{¶ 10} The "sexually oriented offender" classification is the least restrictive classification. *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, ¶ 9. Although R.C. Chapter 2950 does not define "sexually oriented offender," the Ohio Supreme Court explained that "a 'sexually oriented offender' is a person 'who has committed a "sexually oriented offense" as that term is defined in R.C. 2950.01(D) but who does not fit the description of either habitual sex offender or sexual predator.'" *Id.*, quoting *State v. Cook*, 83 Ohio St.3d 404, 407, 700 N.E.2d 570 (1998), and *State v. Williams*, 88 Ohio St.3d 513, 519, 728 N.E.2d 342 (2000).

{¶ 11} The next classification, more serious than a sexually oriented offender but not as serious as the most restrictive classification, is "habitual sex offender." A "habitual sex offender" is defined as a person who "is convicted of or pleads guilty to a sexually oriented offense and who previously has been convicted of or pleaded guilty to one or more sexually oriented offenses." Former R.C. 2950.01(B).

{¶ 12} Finally, the most restrictive classification is "sexual predator." A "sexual predator" is defined as "a person who has been convicted of or pleaded guilty

to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." Former R.C. 2950.01(E).

{¶ 13} The trial court classified Gray as a sexual predator. In determining whether an offender is a sexual predator under Megan's Law, former R.C. 2950.09(B)(3) instructs the court to consider the following: (1) the offender's age and criminal record, (2) the victim's age, (3) if there were multiple victims, (4) whether the offender used drugs or alcohol to impair the victim, (5) the offender's criminal record, whether the offender completed the sentence for any offense, and whether the offense was a prior sexually oriented offense, (6) whether the offender participated in any available program for sex offenders, (7) whether the offender demonstrated a pattern of abuse or displayed cruelty toward the victim, (8) any mental illness or disability of the offender, and (9) any other behavioral characteristics that contribute to the sex offender's conduct. *See* former R.C. 2950.09(B)(3)(a)-(j).

{¶ 14} Although the court must consider the factors set forth in former R.C. 2950.09(B)(3), it is not required to make an individual assessment of those factors, nor is any one factor or combination of factors dispositive. *State v. Caraballo*, 8th Dist. Cuyahoga No. 89757, 2008-Ohio-2046, ¶ 8.

{¶ 15} The state has the burden of proving, by clear and convincing evidence, that the offender is a sexual predator. *State v. Hendricks*, 8th Dist. Cuyahoga No. 102365, 2015-Ohio-3035, ¶ 13. Clear and convincing evidence is more than a mere preponderance of the evidence, yet it does not rise to the level of evidence

beyond a reasonable doubt. *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). Clear and convincing evidence is evidence that "produces in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Id.* at paragraph three of the syllabus.

{¶ 16} Sexual predator classifications under Megan's Law are considered civil in nature. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, syllabus. Therefore, the Ohio Supreme Court held that sexual classifications under Megan's Law should be reviewed under a "civil manifest-weight-of-the-evidence standard" and "may not be disturbed when the judge's findings are supported by competent, credible evidence." *Id.* The Supreme Court explained in *Wilson* that the language, "supported by competent, credible evidence," came from the language it used in *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus, to explain the civil manifest-weight-of-the-evidence standard ("Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."). *Wilson* at ¶ 21, quoting *C.E. Morris*. at the syllabus. The Supreme Court further explained that the "civil-manifest-weight-of-the-evidence standard affords the lower court more deference then does the criminal standard." *Id.* at ¶ 26, citing *Barkley v. Barkley*, 119 Ohio App.3d 155, 159, 694 N.E.2d 989 (4th Dist.1997).

{¶ 17} After *Wilson*, however, the Supreme Court explained that *C.E. Morris* had created confusion over the years regarding the manifest weight standard in civil

cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 14-16. The Supreme Court clarified that "neither the constitution nor statutes nor rules of procedure treat civil cases differently from criminal cases with regard to appellate review on the issues of sufficiency and manifest weight." *Id.* at ¶ 17. Thus, the Supreme Court concluded that the criminal manifest weight standard set forth in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), also applied when reviewing the weight of the evidence in civil cases. *Id.* The manifest weight of the evidence standard set forth in *Thompkins* is as follows:

> [A] challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. [*Thompkins* at 387.] Because it is a broader review [than sufficiency of the evidence], a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence. *Id.*, citing *State v. Robinson*, 162 Ohio St. 486, 487, 124 N.E.2d 148 (1955).

> In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as a "thirteenth juror." *Id.* In doing so, it must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine "'whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin*.

*State v. Jenkins*, 8th Dist. Cuyahoga No. 109323, 2021-Ohio-123, ¶ 26-27.

**{¶ 18}** Although reviewing courts sit as the "13th juror" and must independently review the record and weigh the evidence, "court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastly*, 132 Ohio

St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 21.  Specifically, the Supreme

explained:

> [I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *
>
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.

*Id.*, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d

1273 (1984), fn. 3.

{¶ 19} We therefore apply the weight-of-the-evidence standard set forth in

*Thompkins*, while keeping in mind the presumption in favor of the factfinder.

**III. Facts and Analysis**

{¶ 20} Gray pleaded guilty to sexually oriented offenses, and thus, the first

prong of R.C. 2950.01(E)(1) has been met.  Therefore, this court must determine

whether the second prong of R.C. 2950.01(E)(1) was established, namely, whether

the evidence clearly and convincingly established that Gray is likely to commit one

or more sexually oriented offenses in the future.

{¶ 21} The parties submitted a joint exhibit to the court, which was a "House

Bill 180/Sexual Predator Designation Evaluation" written by Dr. Michael Aronoff,

Chief of Psychology at the Court Psychiatric Clinic.  Dr. Aronoff evaluated Gray on

December 5, 2019, relying on his clinical interview with Gray, the Abel Assessment

for Sexual Interest, Static-99R, Gray's presentence investigation report from

June 17, 2008, the state's sentencing memorandum, records from the Ohio Department of Rehabilitation and Correction, and the prosecutor's file.

{¶ 22} At the hearing, the state explained that Gray was the karate instructor for the two victims, ages 14-15 years old and 17 years old, for multiple years. Gray's offenses against the younger victim took place between August 2006 and October 2o07, and in August 2007 against the older victim. The state told the court that there was a "demonstrated pattern of grooming" the young victims. Gray "was in a position of trust" over the victims throughout the course of the events.

{¶ 23} With respect to the younger victim, the state told the court that Gray's "conduct escalated." The state explained, "It went from petting to then oral sex to then sexual intercourse." According to Dr. Aronoff's report, Gray first "fondled" the younger victim's breasts when she was 13 years old, when they were on a karate trip in Korea. Subsequently, Gray began texting the victim, asking her inappropriate questions regarding her "virginity and kissing." This progressed to "kissing, fondling, and fingering of her genitals." "In August 2006, Gray and the victim performed oral sex on each other. In 2007, they engaged in sexual intercourse four times." Dr. Aronoff further reported that as Gray was committing the offenses, he was sending text messages to the victim, telling her that "he loved her and kind of encouraging the continuous sexual activity."

{¶ 24} There was only one incident involving the older victim. According to Dr. Aronoff's report, Gray initiated a "threesome involving" both victims in August 2007. During this incident, Gray "fondled" the older victim's breasts, "touched her

buttocks[,] and kissed her." He also texted the older victim "on many occasions to invite her to engage in a threesome" and "requested she send him pictures of her body."

{¶ 25} According to Dr. Aronoff's report:

The defendant was arrested for the current offenses on 10/16/07. At that time, North Royalton Police became aware that approximately three weeks prior, Brunswick Police seized the defendant's computers and cameras related to possible offenses involving his downloading/trading images of child pornography. According to the State's Sentencing Memorandum, "Mr. Gray is potentially facing federal child pornography charges. In the fall of 2007, the Brunswick Police Department seized Mr. Gray's home computers in connection with the child pornography investigation. Images of child pornography were found on Mr. Gray's computers. The State of Ohio and Mr. Gray's Attorney have been in contact with the United States Attorney handling the investigation. The State of Ohio and Mr. Gray's Attorney have been informed that Mr. Gray is facing a minimum of five to 10 years in prison if convicted of the federal case. The United States Attorney has informed the State of Ohio and Mr. Gray's Attorney that he will not seek an indictment for Child Pornography if Mr. Gray receives substantial time on his case in Cuyahoga County." Thus, it does not appear the defendant was indicted/charged with offenses related to his viewing/possessing images of child pornography.

{¶ 26} The state explained that Dr. Aronoff's report states that Gray "downplay[ed]" the offenses. The state told the court that it could consider this under the R.C. 2950.09(B)(3) factors as "additional behavior" that contributed to the offender's conduct. Gray told Dr. Aronoff in December 2019 that the younger victim "had an issue," she confided in him, and he would listen to her. Gray stated that she asked him if she could hug him, and he said, "Yes." Gray said, "The professional relationship degraded" after that. Gray stated they would "push, shove, touch, flirt," and "had oral sex" a couple of times and then they had sex four times.

Gray told Dr. Aronoff that the younger victim "brought a girl * * * in one time." Gray stated that it was "awkward" and "weird" and "[n]othing materialized out of that." The state argued, "So, again, Your honor, he's minimizing and downplaying what happened between him and the victims."

{¶ 27} Dr. Aronoff discussed Gray's adjustment to incarceration in his report, pointing out that Gray participated in many programs. These programs included Mandatory Sex Offender Education Program, Comprehensive Sex Offender Program, Advanced Job Training, Carey Guide-Five-EBT Tools — Empathy; Carey Guide – Engaging Prosocial Others, The Only Person You Cheat is You, Carey Guide — Violence and Lethality, Carey Guide — Impaired Driving, Carey Guide — Maximizing Strength, Victim Awareness, Red Cross, RBN Excellence Program — Financial Peace University, Literacy of Daily Living, Career Tech — Visual Communication Art, Psychology of Incarceration, Thinking for a Change, From the Inside Out, and CEA Peer Literacy Tutor Training. He also participated in several group activities and obtained his bachelor's degree while in prison.

{¶ 28} Gray reported to Dr. Aronoff that he completed three sex offender programs. The first program was at the Sex Offender Risk Reduction Center ("SORRC"). Gray stated that he was there "for a short time," and did not "really remember what happened." The second program was a 12-week program while in Richland Correctional Institution, but no other details were included. Gray participated in the third program from October 2018 to November 2019 while at

Grafton Correctional Institution ("Grafton Program"). Dr. Aronoff and the state

discussed the Grafton Program at length.

{¶ 29} In his initial sex offender assessment as part of the Grafton Program,

Gray received a score of 12 on the Sex Offender Treatment Intervention and Progress

Scale.[1] When he completed the Grafton Program, his risk has lessened to 9. The

social worker wrote the following narrative just before Gray was about to complete

the Grafton Program:

> Mr. Gray began this Comprehensive Sex Offender Program on December 11, 2018 and is scheduled to complete it on November 18, 2019. Mr. Gray scored a 2 on the STATIC 99 yet received a comprehensive SORRC risk assessment due to his sexual deviance. His initial in-program assessment score was 12 completed on October 15, 2018. His module 1 assessment was completed on June 10, 2019 and he received a score of 11. His module 2 assessment was completed on September 27, 2019 and he received a score of 11. His discharge assessment on November 15, 2019 received a score of 9. Mr. Gray identified his top thinking errors as entitlement, pretentiousness, fear of the putdown, failure to consider injury to others, and poor decision making for responsible living. Mr. Gray was open to intervention and appeared to comprehend the material being discussed. He completed his practice work in a competent manner and participated in group discussion and role plays. He continued to present with pretentiousness throughout the program. He identified the immense loss he suffered from committing his offense and how his family and society were impacted as well. He acknowledged the effects on his victim yet had a tendency to downplay them. Mr. Gray admits to his offense yet he believed his victim "flirted" and he did not give sufficient credence to the fact that she was a child and he was her instructor. He downplayed the pornography issue as well and denied he was downloading and trading images. His cognition of the material being discussed was evident by his participation in group discussions and his practice work. He was able to identify risky situations and coping

---

[1] Low risk was 0-3; moderate risk was 4-11; and high risk was 12 or above.

strategies appropriate to said situations. Mr. Gray was able to successfully complete the Comprehensive Sex Offender Program.

Recommendations [:] Mr. Gray should be closely monitored and restricted from having unsupervised contact with minors due to the ages of his victims. He should have no pornography or sexually explicit material, including computer access, due to the identification of this as a contributing factor in his offense. Given the fact that he used his position as a karate instructor to obtain access to his victims, his choice of employment should exclude access to minors and positions of power involving them. He should review his Risk Management Plan frequently in order to continue implementing his coping strategies and other skills developed throughout this program.

{¶ 30} The state argued that although Gray completed the Grafton Program after participating in it for approximately one year and reducing his risk, he continued to downplay his role and maintained that the young victims played a part in the sex offenses. The state further pointed out that Gray still downplayed the issue of pornography as well and highlighted the recommendations by the social worker. Additionally, Gray received a final score of nine at the end of the Grafton Program, which indicated that he was still a "moderate" risk.

{¶ 31} Dr. Aronoff reported Gray's results on the Static-99R, which is an "actuarial instrument designed to estimate the probability of sexual offense recidivism among adult males who have been arrested, charged, or convicted of at least one sexual offense." Dr. Aronoff explained that the original test, the Static-99, was revised in 2009. The Static-99R accounts more for the fact that "individuals' risk for sexual offense recidivism decreases as they age."

{¶ 32} Dr. Aronoff said that Gray's score on the Static-99R was "0," which indicates "below average risk" and "equates with a predicted sexual offense

recidivism rate of 2.8% within five years."  But Dr. Aronoff explained that the authors of the Static-99R "note that this instrument does not measure all relevant risk factors" and that Gray's "recidivism risk may be higher or lower than that indicated" by his score.

{¶ 33} Dr. Aronoff reported that according to the results of the Abel Assessment for Sexual Interest, Gray has a "significant sexual interest" in adolescent females and adult females.  Further, Gray "rated the notion of being sexual with adolescent females as 'moderately sexually arousing' and that with adult females as 'slightly sexually arousing.'"  The state acknowledged that Dr. Aronoff said that it was normal for adult test subjects to "harbor sexual interests in adolescents but obviously illegal to act on such."

{¶ 34} Dr. Aronoff further reported that Gray may have "unspecified paraphilic disorder" because he engaged in sexual activity with adolescent females and viewed child pornography for periods longer than one year.  Gray's diagnosis may involve "hebephilia as well," which Dr. Aronoff explained is a sexual interest in pubescent female adolescents.

{¶ 35} The state also pointed out that in *Gray*, 8th Dist. Cuyahoga No. 91806, 2009-Ohio-4200, this court stated:

> The appellant argues in essence that the trial court considered conduct that Gray was neither charged with nor convicted of when it imposed its sentence; specifically, that Gray was under federal investigation for possession of child pornography on his home computer at the time of the plea and sentence in the instant matter.  In support of his arguments, Gray points to the State's sentencing memorandum, which stated in part that Gray possessed child pornography on his home

computer-a fact neither charged nor proven in the instant case. Gray argues that the trial court abused its discretion when considering this information, and that its sentencing decision was influenced by it.

Putting aside for the moment that it was entirely lawful for the trial court to consider this fact, the record reflects that the trial court also considered all the pertinent sentencing factors under R.C. 2929 et seq. in making its determination, including the fact that Gray was a mentor, teacher, coach, and in short, a person who was in a position of trust with children of tender years when it stated:

"What I gather from this is you've basically, I think, left [sic]- have led a double life. You took your position as a teacher and mentor and nurtured this twelve-year-old girl to fulfill your sick desires, quite honestly. You're an adult. You don't fall in love or tell a twelve-year-old you love her, much less have physical contact with her. That's not right. You have a personality or character flaw, because this was not an isolated incident of a lapse in judgment. This was a pattern of misconduct over a period of several years. When you throw in the fact that you're downloading child pornography on your computer just reaffirms what I feel is going on here. You're the proverbial wolf in sheep's clothing." (Tr. 47, 48.)

Gray neglects to mention in his arguments that his plea in the instant matter was negotiated in part because of that parallel federal investigation. At the sentencing hearing, Gray's counsel acknowledged that his client was under federal investigation for possessing child pornography, and stated: "We ask the court to recognize that these are the first criminal offenses and that he's plead [sic] guilty to more charges as a result of wishing to globally resolve any federal charges." (Tr. 43.) Therefore, Gray's own counsel acknowledged the influence of the alleged conduct on the plea in the instant case. At sentencing, the trial court's consideration of some of the very same acts that were a part of the plea negotiation cannot constitute plain error, especially when those acts are acknowledged by counsel in his statements before the court.

*Id.* at ¶ 7-9 (the state only highlighted paragraph 8, but we included the others for context). Based upon the state's arguments, it argued that Gray should be labeled a sexual predator.

{¶ 36} Defense counsel argued to the court that Gray should be labeled a sexually oriented offender because the state failed to prove by clear and convincing evidence that Gray was likely to engage in one or more sexually oriented offenses in the future. Defense counsel emphasized to the court that Gray has no criminal history besides the current offenses and minor traffic offenses. Defense counsel further told the court that Gray had completed numerous programs while in prison, and he completed sex offender programming.

{¶ 37} Defense counsel described Gray's prison record to the court and submitted several exhibits. Defense counsel stated that Gray was categorized in prison as a "security risk level of one, which is the lowest." He was originally a three. Further, Gray had no major infractions while in prison.

{¶ 38} Defense counsel explained that Gray received his bachelor's degree from Ashland University. He also completed a number of relevant courses in prison in addition to the sex offender program. Defense counsel highlighted Gray's completion of Victim Awareness, Thinking for a Change, Literacy of Daily Living, From the Inside Out, Violence and Lethality training, Maximizing Strengths, and Empathy.

{¶ 39} Defense counsel stated that Gray's current age, 43, reduces the likelihood that he will reoffend because "as people get older," they are less likely to reoffend.

{¶ 40} Defense counsel argued that although there were two victims, only one conviction involved the older victim. Gray did not use drugs or alcohol with the

victims. He had no prior juvenile record or mental illness. Gray did not use cruelty or threats during the offenses.

{¶ 41} Defense counsel explained that in the year-long sex offender program that Gray completed while in prison, Gray continued to graduate to the next level and successfully completed the program. Defense counsel stated that they could have held him back but did not. Defense counsel also highlighted to the court the fact that the social worker found Gray to be "open to examining and changing attitudes and thoughts that contributed to his sexual offending."

{¶ 42} Defense counsel further emphasized that although the Static-99 is not a perfect predictor of recidivism, it is still "a tool that is very heavily relied on to predict recidivism in the future," and Gray scored a two and a zero on two different Static-99 tests. Defense counsel further pointed out that on the Abel Assessment, Dr. Aronoff explained that it was normal to harbor sexual interests in adolescents.

{¶ 43} Defense counsel told the court that she disagreed with the state that Gray minimized viewing pornography or child pornography. Defense counsel stated that Gray "readily discuss[ed] his pornography viewing and use" and noted "that it became more prominent during the commission of this current offense." Defense counsel further explained that Gray admitted to downloading child pornography and viewing it for about 1.5 years, which corresponds to the duration of the offenses.

{¶ 44} After the hearing, the trial court found that Gray was likely to engage in one or more sexually oriented offenses in the future. The trial court stated:

After considering all the exhibits as well as arguments of counsel, I'm going to find that the defendant will be designated as a sexual predator. * * * [T]he reasons are as follows: He had two victims in this case, one of which was between the ages of 14 and 15, and the other 17. So we have multiple victims.

The nature of the sexual conduct demonstrates a pattern of abuse. This was a classic case of bullying. The defendant stood in a position of authority as being her long-time martial arts instructor. He ingratiated himself with the family, and the nature of the conduct escalated over time.

Additionally, during the counseling sessions to an extent the defendant did not place seriousness of his conduct and still perceived that the victim was partially responsible.

Additionally, he admitted to downloading child pornography and minimized his interest in this type of material, although he did admit that he accessed it not accidentally, but with the purpose and intent to appease his sexual desires.

Finally, during the court clinic evaluation, he admitted to being sexually aroused by adolescent females, although according to the evaluation, the doctor, this was not unusual for men of his age.

During the year-long stay at the sexual offender program at Grafton, there was, again, a note of his interest in younger female adolescents, and they recommended that the defendant be closely monitored and restricted from having unsupervised conduct with any minor.

{¶ 45} After reviewing the record, we find that the state proved by clear and convincing evidence that Gray was likely reoffend sexually in the future. Notably, even Gray's social worker who compiled information from the Grafton Program, recommended at the close of the program that Gray not have unsupervised contact with minors "due to the ages of his victims." Moreover, after participating in three sex offender treatment programs, with the most recent one taking place over the period of one year, the social worker reported that Gray still "had a tendency to

downplay" the offenses. He still believed that his victims played a part in what occurred because the younger victim "flirted" with him. The social worker pointed out that Gray did not give "sufficient credence to the fact that she was a child and he was her instructor." The social worker also reported in Gray's final summary of the Grafton Program that Gray continued to "downplay[] the pornography issue as well."

{¶ 46} We further note that in his conversations with Dr. Aronoff in December 2019, Gray also downplayed his offense involving the older victim. Gray blamed the younger victim for bringing the older victim "in one time." He told Dr. Aronoff that he "got a gross sexual imposition for grabbing [the older victim's] butt." But according to the record, Gray also touched the older victim's breasts, kissed her, and continued to text the older victim "on many occasions to invite her to engage in a 'threesome'" and "requested she send him pictures of her body."

{¶ 47} Although Gray does have some of the R.C. 2950.09(B)(3) factors in his favor, no one factor or combination of factors is dispositive. *Caraballo*, 8th Dist. Cuyahoga No. 89757, 2008-Ohio-2046, ¶ 8. We therefore find that the state proved by clear and convincing evidence that Gray was likely to reoffend sexually in the future. We further conclude that the trial court's judgment finding Gray to be a sexual predator is not against the manifest weight of the evidence.

{¶ 48} Accordingly, we overrule Gray's sole assignment of error.

{¶ 49} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, ADMINISTRATIVE JUDGE

MICHELLE J. SHEEHAN, J., CONCURS;
LARRY A. JONES, SR., J., CONCURS IN JUDGMENT ONLY