JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Thomas H. Nagy, appeals from a judgment of the Cuyahoga County Court of Common Pleas adjudicating him a sexually oriented offender. For the following reasons, we affirm.
 {¶ 2} On May 18, 1982, Nagy pled guilty to aggravated murder in violation of R.C. 2903.01. The indictment charged that between November 13 and 14, 1981, Nagy "unlawfully and purposefully caused the death of another, to-wit: [victim] while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit Kidnapping and/or Rape."[1]
 {¶ 3} On August 6, 2007, Nagy appeared before the trial court pursuant to Am. Sub. H.B. No. 180 for a sexual offender classification hearing to determine if he should be adjudicated a sexual predator.
 {¶ 4} At the hearing, the state introduced several exhibits into evidence, including the autopsy protocol, the coroner's verdict, pictures of the victim and where her body was found, defendant's statement that he gave to police on November 17, 1981, and the Court Psychiatric Clinic's Sexual Predator Evaluation. Nagy also introduced several exhibits, including an Institutional Summary Report, and several certificates showing various programs he completed while in prison. *Page 4 
 {¶ 5} The autopsy report and coroner's verdict show that the victim died from a gunshot wound to the head, "with perforations of skull and brain, and blunt impact to head, trunk and extremities with skeletal and soft tissue injuries." Her body had been wrapped in a canvas bag and thrown off of the Main Avenue bridge. She also had a black plastic bag wrapped around her head, and had multiple broken bones. Rectal smears taken from the victim indicated spermatozoa was present, and she had lacerations in her vagina.
 {¶ 6} In Nagy's four-page statement to police in November 1981, he explained that he had been out with the victim on the night she was murdered. They had been to a bar in East Cleveland. They left the bar around midnight. He began driving east on I-90 and said he mistakenly got off on the Eddy Road exit. He stated that he and the victim were sitting on the exit ramp "smooching" when another car pulled up. Nagy stated that a man in the other car had a gun, so he got his gun out from underneath his seat. Nagy said he got out of the car, walked around to the passenger side of the car, and the gun "went off." The man left, so Nagy thought he scared him away. But when he got back into the vehicle, he saw that he had shot the victim in the head.
 {¶ 7} Nagy said he "lost it," drove back to Cleveland, got gas, and then drove to his home in Thompson, Ohio. When he got to his house, he started a fire and burned all of his clothes. He was confused, drunk, and walking from room to room in his house.
 {¶ 8} He went back outside and wrapped the victim's head in a plastic bag because he could not look at her head. The victim's body was "laying on the grass," and he became "amorous" and needed gratification right then. He stated that he attempted to have vaginal *Page 5 
intercourse with the victim even though he "knew that she was dead," but he could not complete the act because he had trouble maintaining an erection.
 {¶ 9} Later, however, Nagy said that he turned her body over and had anal intercourse with the victim's corpse. He then wrapped her in the canvas bag, tied her up with twine, put her body in his car, drove back to Cleveland, and dumped her body off of the Main Avenue bridge because he "thought there was water below." He then stopped his car somewhere near Edgewater Park and threw the gun "over the edge of a rocky cliff."
 {¶ 10} The Sexual Predator Evaluation reported that Nagy's STATIC 99 score was a 2.
 {¶ 11} At the close of the hearing, the trial court agreed with Nagy that the state did not prove by clear and convincing evidence that he should be adjudicated a sexual predator. But the court did find him to be a sexually oriented offender.
 {¶ 12} It is from this judgment that Nagy appeals, raising three assignments of error for our review:
 {¶ 13} "[1.] The trial court erred when it ruled that Defendant-Appellant was a sexually-oriented offender although he was not convicted of a sexual offense.
 {¶ 14} "[2.] The trial court erred when it allowed the prosecutor to read from the original Cleveland police department homicide file which was not in evidence.
 {¶ 15} "[3.] The trial court erred when it directly questioned and interrogated Appellant in spite of the objections of defense counsel."
 STANDARD OF REVIEW *Page 6 {¶ 16} In State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, the Ohio Supreme Court clarified the standard of review applicable to sex offender classifications. The Supreme Court held that "[b]ecause sex-offender classification proceedings under R.C. Chapter 2950 are civil in nature, a trial court's determination in a sex-offender-classification hearing must be reviewed under a civil manifest-weight-of-the-evidence standard and may not be disturbed when the trial judge's finding are supported by some competent, credible evidence." Id., at the syllabus.
 {¶ 17} The civil manifest-weight-of-the-evidence standard "affords the lower court more deference than the criminal standard." Id. at ¶ 26. "Thus, a judgment supported by `some competent, credible evidence going to all the essential elements of the case' must be affirmed." Id., citing C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279.
 SEXUAL OFFENDER CLASSIFICATIONS {¶ 18} In Wilson, the Supreme Court also described the three classifications of sexual offenders under R.C. Chapter 2950:[2]
 {¶ 19} "In August 1999, Ohio defined three categories of sexual offenders. They were, starting with the category containing those offenders who are least likely to reoffend (1) sexually oriented offenders, (2) habitual sex offenders, and (3) sexual predators. Former *Page 7 
R.C. 2950.01(B), (D), and (E), Am. Sub. H.B. No. 565, 147 Ohio Laws, Part II, 4493, 4521; State v. Williams (2000), 88 Ohio St.3d 513, 518,2000-Ohio-428.
 {¶ 20} "A `sexually oriented offender' is a person `who has committed a "sexually oriented offense" as defined in R.C. 2950.01(D), and does not meet the definition of either a habitual sex offender or sexual predator.' Williams at 519.
 {¶ 21} "A `habitual sex offender' is a person who has been convicted of or pleaded guilty to a sexually oriented offense and who previously has been convicted of or pleaded guilty to one or more sexually oriented offenses. R.C. 2950.01(B); Williams at 518.
 {¶ 22} "Finally, a `sexual predator' is a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. R.C. 2950.01(E); Williams at 518-519.
 {¶ 23} "If a defendant has been convicted of a sexually oriented offense and the trial court determines that the offender is not a habitual sex offender or a sexual predator, then the designation of `sexually oriented offender' attaches as a matter of law. State v.Hayden, 96 Ohio St.3d 211, 2002-Ohio-4169, _18."
 EVIDENTIARY QUESTIONS {¶ 24} For ease of understanding, this court will analyze Nagy's assignments out of order. In his second assignment, Nagy argues that the trial court erred when it permitted the state, over his objection, to "read into the record information from a Cleveland police department homicide file which was not evidence and which was not an exhibit." (Emphasis sic.) *Page 8 
 {¶ 25} The transcript from the hearing reveals, as Nagy claims, that the trial court permitted the prosecutor to read from the original homicide file in this case. Specifically, the prosecutor focused on information purportedly in the file that a deputy coroner, Dr. Balraj, had opined about what occurred prior to the victim's death, as well as the death itself[3]
 {¶ 26} "A sexual predator determination hearing is similar to a sentencing hearing, where it is well-settled that the rules of evidence do not strictly apply. State v. Cook (1998), 83 Ohio St.3d 404, 425. As long as the evidence sought to be admitted meets the minimum standard of `reliable hearsay,' the evidence is admissible. State v. Reed (May 16, 2001), 7th Dist. No. 00JE22, 2001-Ohio-3271." State v. Baron, 8th Dist. No. 80712, 2002-Ohio-4588, _12. It is also well-settled that a trial court has broad discretion in determining the admissibility of evidence. Id. at _11, citing State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus.
 {¶ 27} At the hearing, the prosecutor stated, "I had the opportunity, judge, to review the original Cleveland police department homicide file, which I have in front of me." He then read from the file. But there is no indication that Nagy, his counsel, or the trial court judge read the file. Nor did the prosecutor attempt to admit certified copies of this report into evidence. *Page 9 
 {¶ 28} Although evidence rules are relaxed in a sexual classification hearing as to what can be admitted into evidence, including hearsay,it still must be evidence. A prosecutor's statements are not testimony or evidence.
 {¶ 29} The state argues that "in sexual predator adjudications such as this police reports regarding Appellant's sexually oriented offense has been previously admitted before the court[,]" citing State v.Gulley, 9th Dist. No. 21900, 2004-Ohio-4192, _7, in support. We agree that police reports can be and have been admitted in sexual classification hearings. Here, however, the prosecutor did not move to admit the report, and thus, the report was not admitted into evidence. Again, a prosecutor's statements are not evidence.
 {¶ 30} Moreover, this court cannot determine if "the trial judge's finding are supported by some competent, credible evidence" if that evidence is not in the record. Wilson, supra, at the syllabus.
 {¶ 31} Thus, we agree with Nagy that the trial court erred when it considered this information. However, because we conclude in the next section (Nagy's first assignment) that the trial court still had sufficient "competent, credible evidence" to adjudicate Nagy a sexually oriented offender, even without the prosecutor's statements, the error was harmless. Accordingly, Nagy's second assignment of error is overruled.
 AGGRAVATED MURDER AS A "SEXUALLY ORIENTED OFFENSE" *Page 10 {¶ 32} Returning to Nagy's first assignment of error, he argues that the trial court erred when it found him to be a sexually oriented offender because he was not convicted of a sexually oriented offense. He maintains that because he only pled guilty to aggravated murder without a specification that the murder was "committed with a sexual motivation," he could not be classified as a sexually oriented offender.
 {¶ 33} When Nagy pled guilty to aggravated murder, sexual offender classifications did not yet exist. However, when the General Assembly passed Am. Sub. H.B. 180 in 1996, creating registration and notification requirements for sex offenders, it made the provisions applicable to offenders previously convicted, but not yet released from prison prior to its effective date. See State v. McClellan,10th Dist. No. 01AP-1462, 2002-Ohio-5164, _16, fn. 2.
 {¶ 34} R.C. 2950.09(B)(1)(a) states in pertinent part that:
 {¶ 35} "[t]he judge who is to impose sentence on a person who is convicted of *** a sexually oriented offense that is not a registration-exempt sexually oriented offense shall conduct a hearing to determine whether the offender is a sexual predator if any of the following circumstances apply:
 {¶ 36} "***
 {¶ 37} "(ii) Regardless of when the sexually oriented offense was committed, the offender is to be sentenced on or after January 1, 1997, for a sexually oriented offense ***, and either of the following applies: *** the sexually oriented offense is a designated homicide, assault, or kidnapping offense and either a sexual motivation specification or a *Page 11 
sexually violent predator specification, or both such specifications, were not included in the indictment, count in the indictment, or information charging the designated homicide, assault, or kidnapping offense."
 {¶ 38} Thus, it is clear from this provision that, contrary to what Nagy argues, a sexual motivation specification is not a necessary prerequisite for it to hold a sex offender classification hearing. Without a sexual motivation specification, the issue becomes whether Nagy's conviction for aggravated murder under R.C. 2903.01 constitutes a sexually oriented offense.
 {¶ 39} Certain crimes, listed in R.C. 2950.01(D)(1)(a) are always sexually oriented offenses, such as rape, sexual battery, and gross sexual imposition. A person convicted of one of those crimes is automatically a sexually oriented offender, and the only question to be determined at a classification hearing is whether he is a habitual sex offender or a sexual predator. Certain other crimes, listed in R.C. 2950.01(D)(1)(c), however, are only sexually oriented offenses when they are "committed with a sexual motivation."
 {¶ 40} Aggravated murder is among those crimes that may be a sexually oriented offense if it is "committed with a sexual motivation." See R.C. 2950.01(D)(1)(c). The burden of proving "sexual motivation" is on the state and, in order to carry that burden, it must present clear and convincing evidence. See Wilson, supra, at _20.
 {¶ 41} Whether an offense of murder was "committed with a sexual motivation" is a question of fact, "which lies with the unique facts and circumstances of each case." *Page 12 McClellan, supra, at _15 (interpreting the former R.C. 2950.01(D)(3)).[4] The Second District Court of Appeals, also applying the former "gratification prong," set a standard of review for a claim challenging the evidence in support of it: "[w]here there is not testimony or direct evidence that the offender was gratifying himself sexually, a finding of purpose of sexual arousal or gratification may be inferred from the type, nature, and circumstances surrounding the contact." State v. Florer, 5th Dist. No. 2005-CA-47, 2006-Ohio-4441, _13, citing State v. Anderson (Mar. 3, 2000), 2d Dist. No. 99-CA-19.
 {¶ 42} In McClellan, the Tenth District determined that murder was a sexually oriented offense when victims's body was found in a remote area, with her blouse undone, her bare breasts exposed and smeared with blood, and her jeans were unbuttoned and pulled down over her tights. Id. at _ 16. In addition, small aqua fibers on her bare breasts matched the fibers found in defendant's car. Id.
 {¶ 43} In the case sub judice, Nagy pled guilty to "purposely caus[ing] the death of another ***while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit Kidnapping and/or Rape." Thus, he admitted to *Page 13 
murdering the victim while committing kidnapping and/or rape. Rape itself is by definition, a "sexually oriented offense." R.C. 2950.01(D)(1)(a). Thus, this is sufficient "competent, credible evidence" to support the trial court's finding that he committed the murder with "sexual motivation."
 {¶ 44} In addition, we find the facts here similar to the facts inMcClellan, supra. The victim's body in this case was found after it had been thrown off of a bridge. She had been wrapped in a canvas bag, with a plastic bag placed over her head. She had been shot in the head, anally raped, and had lacerations on her vagina, and had skeletal and soft tissue injuries to her brain, trunk, and extremeties. These facts were sufficient for the trial court to infer, from the "type, nature, and circumstances surrounding the contact," that Nagy committed the murder with a sexual motivation. Florer, supra, at _13.
 {¶ 45} Accordingly, we conclude the trial court had competent and credible evidence before it (even without the statements the prosecutor read into the record) to adjudicate Nagy a sexually oriented offender. Nagy's first assignment of error is without merit.
 {¶ 46} In his third assignment of error, Nagy maintains that the trial court erred when it continued to question him after he informed the court that he did not wish to make a statement. We disagree.
 {¶ 47} After Nagy informed the court that he did not wish to make a statement, the trial court did question Nagy about various matters. However, the trial court did not rely on any of these statements when it found Nagy to be a sexually oriented offender. As such, *Page 14 
Nagy was not prejudiced in any way by the trial court's questioning. Nagy's third assignment of error is without merit.
 {¶ 48} Accordingly, the judgment of the Cuyahoga County Court of Common Pleas, classifying Nagy as a sexually oriented offender, is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., CONCURS; SEAN C. GALLAGHER, P.J., CONCURS IN JUDGMENT ONLY WITH SEPARATE OPINION
[1] There were also rape and kidnapping specifications attached to the aggravated murder charge, but they were nolled as part of the plea agreement. Nagy was also separately charged with kidnapping and two counts of rape, but these counts were also nolled.
[2] As of January 1, 2008, sexual offenders are now classified according to a three-tier classification system set forth in R.C. 2950.01(E)-(G). See Am. Sub. S.B. 10. However, since Nagy was adjudicated a sexually oriented offender in 2007, we will apply the provisions that were in effect at that time.
[3] The Coroner's Verdict was admitted into evidence. Dr. S.R. Gerber, Coroner of Cuyahoga County at the time of the murder, signed the verdict. In addition, Dr. Gerber also signed the Autopsy Protocol. Dr. Balraj's name was not on either document.
[4] Former R.C. 2950.01(D)(3) defined aggravated murder as a "sexually oriented offense" when it was "committed with the purpose to gratify the sexual needs or desires of the offender." In Am. Sub. S.B. 10, effective July 1, 2003, the General Assembly changed "committed with the purpose to gratify the sexual needs or desires of the offender" to "committed with a sexual motivation." See R.C. 2950.01(D)(1)(c). According to R.C. 2971.01(J), "`[s]exual motivation' means a purpose to gratify the sexual needs or desires of the offender." Thus, cases decided prior to the effective date of Am. Sub. S.B. 10, determining whether an act is "committed with the purpose to gratify the sexual needs or desires of the offender," are still applicable in determining whether an offense is "committed with sexual motivation."