[Cite as *State v. Hartness*, 2019-Ohio-316.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106810**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**VICTOR HARTNESS**

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-95-323640-ZA

**BEFORE:** Kilbane, A.J., S. Gallagher, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** January 31, 2019

**ATTORNEYS FOR APPELLANT**

Mark A. Stanton
Cuyahoga County Public Defender
Cullen Sweeney
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
Daniel T. Van
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


MARY EILEEN KILBANE, A.J.:

{¶1} Defendant-appellant, Victor Hartness ("Hartness"), appeals the trial court's judgment adjudicating him a sexual oriented offender. For the reasons that follow, we reverse.

{¶2} In May 1995, Hartness was charged with one count of aggravated murder with a felony murder specification, and one count of rape. In September 1995, Hartness, who had no prior record, negotiated a plea agreement with the state. Under the plea agreement, Hartness pled guilty to count one as amended to murder, without the language that the murder was committed during or immediately after a rape and without the felony murder specification. In exchange for Hartness's guilty plea, the state dismissed the rape charge in count two. The trial court sentenced Hartness to a prison term of 15 years to life.

{¶3} In January 2017, shortly before Hartness was scheduled to be released from prison, the Ohio Department of Rehabilitation and Correction notified the trial court that it

needed to conduct a sexual offender classification hearing under Ohio's Megan's Law. Hartness's release date was to be February 1, 2017. The trial court notified Hartness that a classification hearing would be conducted within a year of his release from prison. Hartness was in fact released on February 1, 2017.

{¶4} In the meantime, on April 12, 2017, because Hartness had only been convicted of straight murder, the trial court held a hearing on the propriety of conducting a hearing under Megan's Law. At the hearing, the state indicated that there is a subset of offenses under Megan's Law that require a hearing if the state can prove by clear and convincing evidence that the underlying conviction was sexually motivated. The state also indicated it had Hartness's May 8, 1995 statement to the police. In the statement, Hartness indicated that he and the victim were engaged in consensual sexual intercourse. In addition, the state indicated that the coroner had determined that the victim died of manual strangulation.

{¶5} Defense counsel indicated that there was no basis for the hearing because absent from the transcript of the plea hearing was any language that the offense was committed with a sexual motivation. Defense counsel also indicated that Hartness was charged with aggravated murder and rape, but the state dismissed the aggravating condition that the murder was committed while the defendant was engaged in the commission of another felony, i.e, rape. Defense counsel also indicated that the state dismissed the charge of rape, and further indicated that Hartness and the victim were engaged in consensual sex.

{¶6} On October 31, 2017, the trial court issued a journal entry stating that Hartness was convicted of a sexually oriented offense and subject to registration under Megan's Law. On January 29, 2018, the trial court conducted a classification hearing under Megan's Law and classified Hartness as a sexually oriented offender. The trial court stayed the registration

requirement pending this appeal.

{¶7} Hartness now appeals, assigning the following errors for our review.

### Assignment of Error One

Victor Hartness'[s] classification as a sexually oriented offender constituted a breach of his plea agreement.

### Assignment of Error Two

The trial court erred in classifying Victor Hartness as a sexually oriented offender when he was convicted of murder and not murder with a sexual motivation.

### Assignment of Error Three

The trial court violated Victor Hartness'[s] constitutional rights when it determined, in a summary proceeding without a jury and on a reduced burden of proof, that his murder conviction was committed with a sexual motivation.

### Assignment of Error Four

The trial court failed to present legally sufficient evidence that the murder was committed with a sexual motivation.

{¶8} In the first assignment of error, Hartness argues his classification as a sexually oriented offender is a breach of the plea agreement with the state.

{¶9} In 1996, the General Assembly enacted Ohio's version of the federal "Megan's Law" legislation, which created a comprehensive registration and classification system for sex offenders. *State v. Kahn*, 8th Dist. Cuyahoga No. 104360, 2017-Ohio-4067, citing *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 6-7. Under Megan's Law, a sentencing court was required to determine whether a sex offender fell into one of three classifications (1) sexually oriented offender, (2) habitual sex offender, or (3) sexual predator. *Kahn*, citing *State v. Cook*, 83 Ohio St.3d 404, 407, 1998-Ohio-291, 700 N.E.2d 570.

**{¶10}** This court reviews these determinations under a civil manifest-weight-of-the-evidence standard. *State v. Bidinost*, 8th Dist. Cuyahoga No. 100466, 2014-Ohio-3136. This is because a sex offender classification under Megan's Law is considered civil in nature. *Id.*, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, syllabus. The civil manifest-weight-of-the-evidence standard "affords the lower court more deference than the criminal standard." *State v. Nelson*, 8th Dist. Cuyahoga No. 101228, 2014-Ohio-5285, quoting *Wilson* at ¶ 26. "Thus, a judgment supported by 'some competent, credible evidence going to all the essential elements of the case' must be affirmed." *Id.*, quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶11}** We turn our attention to the plea agreement, which we find dispositive of the instant appeal.

**{¶12}** A plea agreement is generally "contractual in nature and subject to contract-law standards." *State v. Parham*, 8th Dist. Cuyahoga No. 105983, 2018-Ohio-1631, quoting *State v. Butts*, 112 Ohio App.3d 683, 679 N.E.2d 1170 (8th Dist.1996). Plea agreements should be construed strictly against the government. *Parham*, citing *United States v. Fitch*, 282 F.3d 364 (6th Cir.2002). "When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Parham*, quoting *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

**{¶13}** At the plea hearing in this case, the assistant prosecutor presented the plea agreement to the court and stated:

> [MR. BOMBIK]: As the Court has indicated, this is a two count indictment; first count aggravated murder, second count rape. First count of aggravated murder is indicted in terms of what is commonly referred to as felony murder doctrine in

Ohio, that is committing a murder during the course of another felony, to wit: in this case the allegation of rape. * * * It is my understanding at this time the defendant desires to withdraw his formerly entered plea of not guilty and with respect to the first count of the indictment of aggravated murder enter a plea to the lesser included offense of murder in violation of Revised Code Section 2903.02. Basically[,] to accomplish that we ask the Court to delete the language pertaining to committing or attempting to commit or while fleeing immediately after committing or attempting to commit rape and leaving the balance of the indictment to say that purposely caused the death of another, to wit: Lois Strow on or about April 7, 1995 in Cuyahoga County. * * * We would further ask that Count One be amended to delete the felony murder specification, thus leaving with such deletion a charge of straight murder pursuant to 2903.01. * * * We would further recommend upon acceptance of the plea that Count Two of the indictment pertaining to the charge of rape be dismissed.

**{¶14}** Defense counsel agreed and stated:

[MR. GRANT]:We also had an opportunity to discuss with Mr. Hartness the potential consequences of the plea in this matter both in terms of potential sentences and other ramifications. Your Honor, it is our belief at this time that it is his desire to withdraw his previously entered plea of not guilty and to enter a plea of guilty to one count of murder as amended by Mr. Bombik and the deletion of the second count of this matter.

**{¶15}** Prior to accepting Hartness's plea, the trial court stated:

[JUDGE]: The case has been amended to a straight murder. We shall delete from the body of the indictment — the indictment shall read this defendant purposely caused the death of another, to wit: Lois Strow on April 7, 1995, and as such this is straight murder. Deleting the felony murder specification, this is punishable by a term of imprisonment of 15 to life.

**{¶16}** It is clear from our review of the 1995 plea hearing that the state and Hartness were in one accord on deleting the very element the state now attempts to utilize to justify classifying Hartness as a sexually oriented offender. It is also clear that the trial court was satisfied that there was a meeting of the minds between the state and Hartness. Thus, it is clear that a contract existed between the state and Hartness.

**{¶17}** In support of his argument that the state breached the agreement, Hartness relies on our decision in *State v. Mosley*, 8th Dist. Cuyhoga No. 99887, 2014-Ohio-391. In *Mosley*,

involving similar issues, the state indicted appellant on a single count of failing to register in violation of R.C. 2950.041(E) and sought to utilize his 1999 conviction for attempted abduction as the predicate offense triggering the registration requirement. Mosley moved the trial court to dismiss the indictment on the grounds that abduction was not a sex offense. At the hearing on the motion to dismiss, Mosley testified that he entered the guilty plea with the understanding he was not pleading to any offense that carried a registration requirement. Mosley also testified he was advised that attempted abduction was not a sex offense. Mosley specifically testified he would not have entered a plea if the offense was a sex offense that carried a registration requirement. The trial court granted Mosley's motion to dismiss, and the state appealed. *Mosley* at ¶ 5-6.

**{¶18}** In *Mosley* we stated:

Relying on the child-victim oriented offender provisions contained in former R.C. 2950.041 and enacted as part of S.B. 5, effective July 31, 2003, the state argues that Mosley has an absolute duty to register. The state argues that the General Assembly redesignated the offense of abduction of a minor from a sexually oriented offense (see former R.C. 2950.01, effective January 1, 1997, 1996 H.B. 180) to a child-victim offense through S.B. 5. And based on the retroactivity clause contained in former R.C. 2950.041(A)(1)(c), the state argues that Mosley was required to register because (1) his "offense would have been considered a sexually oriented offense prior to July 31, 2003," and (2) he "would have been required to register as a sexually oriented   offender."

Mosley counters that the state's argument is fatally flawed because he was not required to register as a sex offender under Ohio's sex offender registration and notification scheme in effect at the time of his conviction for attempted abduction. Mosley points out that, at the time of his 1999 sentencing, abduction was not automatically considered a sexually oriented offense; it was only a sexually oriented offense if there is an additional determination that the victim "is under eighteen years of age." Former R.C. 2950.01(D)(2)(a). Despite the fact that the victim in this case was under the age of 18, Mosley argues that "the parties effectively agreed, as a part of the plea agreement, that the offense did not involve a minor," thereby avoiding the registration requirements in effect at the time. The state does not dispute this point.

Based on the evidence presented at the hearing on the motion to dismiss, it is clear from the record that Mosley not having to register as a sex offender was a material term of his plea agreement. While the state now contends that Mosley pleaded guilty to attempted abduction of a minor, we find no support for this claim in the record before us. Instead, consistent with Mosley's arguments and the trial court's sentencing journal entry, it appears that Mosley was convicted and sentenced for attempted abduction, without any reference to the victim being a minor. To the extent that the state now seeks to go beyond the terms of the parties' plea agreement, we find that it is precluded from doing so.

{¶19} Likewise, in the instant case, deleting any references to allegations that Hartness committed the offense with a sexual motivation was a material term of the plea agreement. In addition, amending the charge to "straight murder" and dismissing the rape charge is indicative of how material the term was to Hartness's decision to plead guilty. In reaching the plea agreement, the state bargained away the possibility of securing convictions on the aggravated murder and the rape charge, as indicted, in exchange for Hartness pleading guilty to a "straight murder" charge. After this mutual agreement, between the state and Hartness, nothing should disrupt the benefit of the bargain. To view otherwise would undermine the very nature and purpose of plea bargains.

{¶20} Nonetheless, the state argues *Mosley* involved a plea agreement reached after the enactment of Megan's Law, while Hartness entered his plea prior to the enactment, and therefore, the murder conviction should be treated as a sexually oriented offense. We are not persuaded.

{¶21} Importantly, at the time of Hartness's plea in 1995, the offense of murder did not have a sexual motivation component. Under former R.C. 2903.02(A), in effect at the time of Hartness's plea, the offense of murder read as follows: "No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy." Thus, under a plain reading of former R.C. 2903.02(A), Hartness could not have been convicted of murder with a sexual gratification component.

**{¶22}** Nevertheless, to further support its position, the state relies on our decision in *State v. Nagy*, 8th Dist. Cuyahoga No. 90400, 2008-Ohio-4703. However, *Nagy* is distinguishable from the instant case. In *Nagy*, the [defendant] pled guilty to aggravated murder in violation of R.C. 2903.01. The indictment charged that between November 13 and 14, 1981, defendant "unlawfully and purposefully caused the death of another, to-wit: [victim,] while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit Kidnapping and/or Rape." *Nagy* at ¶ 2.

**{¶23}** In *Nagy*, the predicate offense(s) necessary for the aggravated murder conviction were, without question, sexually oriented. Unlike, Hartness, who has always maintained he and the victim were engaged in consensual sex, that the death was accidental, and negotiated out any sexual assault allegations from the agreement. Therefore, we find *Nagy* distinguishable from the instant case.

**{¶24}** The state also seeks to rely on *State v. McClellan*, 10th Dist. Franklin No. 01AP-1462, 2002-Ohio-5164, where a pre-Megan's Law conviction for "straight murder" was considered a sexually oriented offense. We also find *McClellan* distinguishable from the instant case.

**{¶25}** The *McClellan* court stated: "[w]hether or not the offense of murder is classified as one which was 'committed with a purpose to gratify the sexual needs or desires of the offender' is a question of fact that lies with the unique facts and circumstances of each individual case." *McClellan* at ¶ 15, citing *State v. Slade*, 10th Dist. Franklin No. 98AP-1618, 1999 Ohio App. LEXIS 6476 (Dec. 28, 1999).

**{¶26}** Under the unique facts and circumstances of the instant case, it is important to note once more that Hartness has always maintained that he and the victim were engaged in

consensual sex and that her death was accidental. In addition, Hartness objected to and contested the sexual classification hearing. As opposed to *McClellan*, where appellant's counsel neither objected to nor contested the sexual predator hearing or that appellant committed a sexually oriented offense at any time prior to, during, or after the hearing. *McClellan* at ¶ 19. Therefore, we find *McClellan* distinguishable from the instant case.

{¶27} In the aforementioned mutual agreement reached between the parties, the state bargained away the possibility of securing convictions on the aggravated murder and the rape charge, as indicted, in exchange for Hartness pleading guilty to a "straight murder" charge. As such, the state is bound by the plea agreement and is precluded from utilizing the very terms it excised to justify having Hartness classified as a sexually oriented offender. Consequently, under the unique facts and circumstances of the instant case, Hartness should not have been subject to classification.

{¶28} Accordingly, we sustain the first assignment of error.

{¶29} Having found that the state breached the plea agreement and Hartness was not subject to classification, we need not address the remaining assignments of error.

{¶30} Judgment reversed.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

SEAN C. GALLAGHER, J., CONCURS IN JUDGMENT ONLY WITH MAJORITY OPINION AND WRITES SEPARATE CONCURRING IN JUDGMENT ONLY OPINION;

PATRICIA ANN BLACKMON, J., CONCURS WITH MAJORITY OPINION AND WRITES SEPARATE CONCURRING OPINION

SEAN C. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY:

**{¶31}** I respectfully concur in judgment only. Hartness's conviction predated Megan's Law. Under Megan's Law, the state is not permitted to submit evidence to the trial court for the purpose of demonstrating the sexual motivation component during the sexual predator hearing that occurs under the applicable version of R.C. 2950.09(C)(1). Under that subdivision, the department of rehabilitation and correction notifies the trial court of the impending release of an offender who was convicted of a designated homicide, committed with a sexual motivation.

**{¶32}** Under the applicable version of R.C. 2950.09(C)(2)(a), for offenders who committed their crimes and were sentenced before 1997, the sexual offender registration arose by operation of law. The only issue to be determined by the trial court upon the offender's release from a prison term was whether the offender was a sexual predator. R.C. 2950.09 (C)(1)(a), effective 2006. There is no provision for the court to determine whether the offender is a sexually oriented offender; that is a presumption derived from the fact of conviction to a sexually oriented offense. *State v. Burkey*, 9th Dist. Summit No. 19741, 2000 Ohio App. LEXIS 2369, 4

(June 7, 2000).

{¶33} On this point, *State v. Nagy*, 8th Dist. Cuyahoga No. 90400, 2008-Ohio-4703, must be limited. The panel relied on division (B) of that section to conclude that the state is entitled to present evidence of a sexual motivation during the sexual predator hearing for the purposes of determining whether the offender committed a sexually oriented offense. According to *Nagy*, which is heavily relied on by the state in this case, the pertinent version of R.C. 2950.09(B)(1)(a) provided that

> [t]he judge who is to impose sentence on a person who is convicted of * * * a sexually oriented offense that is not a registration-exempt sexually oriented offense shall conduct a hearing to determine whether the offender is a sexual predator if any of the following circumstances apply:
>
> * * *
>
> (ii) Regardless of when the sexually oriented offense was committed, *the offender is to be sentenced on or after January 1, 1997, for a sexually oriented offense * * *, and either of the following applies:* * * * the sexually oriented offense is a designated homicide, assault, or kidnapping offense and either a sexual motivation specification or a sexually violent predator specification, or both such specifications, were not included in the indictment, count in the indictment, or information charging the designated homicide, assault, or kidnapping offense. (Emphasis added.)

*Id.* at ¶ 35-37. *Nagy* applied the above statutory section to an offender sentenced before January 1, 1997, to the contrary of the express language of the statute. The only division of the applicable version of R.C. 2950.09 that addressed sentences that were imposed before 1997 was division (C), which only outlined the process to determine whether an offender is a sexual predator or habitual sexual offender.

{¶34} In this case, Hartness pleaded guilty to murder, with no furthermore clause or accompanying sex offense — which might have satisfied the sexual motivation component. In light of the fact that the department of rehabilitation and correction must determine whether the

offender was convicted of a sexually oriented offense from the conviction, the sexual motivation element must be in the record of conviction; the state cannot supplement the record at the sexual predator hearing for the purposes of determining whether R.C. 2950.09(C)(1) was properly invoked. From the face of the conviction, there is nothing indicating that Hartness was convicted of a sexually oriented offense that implicated the version of R.C. 2950.09(C)(1) in effect. The statutory scheme did not authorize the trial court to determine whether Hartness is a sexually oriented offender, and for this reason, I concur in judgment only.

PATRICIA ANN BLACKMON, J., CONCURRING:

{¶35} I concur with the majority opinion, and I write separately because I do not believe that the state has proven by competent, credible evidence that Hartness's conviction is a sexually oriented offense.

{¶36} This case is specific to its facts. Hartness was charged with murder and various sex offenses. In his plea negotiations, as the majority opinion points out, the state dismissed the sex offenses and allowed Hartness to plead guilty to murder. He served his time. The state now wants him to report under Megan's Law.

{¶37} My question since reading this case is: At what point in this crime did Hartness become a rapist and a murderer? The state may not have to answer that question, but it must present competent and credible evidence that his murder conviction is a sexually oriented offense.

{¶38} If the state wanted Hartness to report as a sexual offender at the time of his crime, and truly believed that this murder was sexually oriented, it could have accepted a plea that

reflected this. My understanding of the history of sexual offender registration is that Ohio has had a reporting law for sex offenders since 1963.

{¶39} The state relies on police reports that do not tell us whether the crime was a sexually oriented offense. We have Hartness's narrative of what happened, but we do not have a crime scene narrative of whether this was a sexually oriented offense. To me, the state failed in its burden.

{¶40} I realize that Hartness strangled the victim. That is proven. He was charged with her death and pled to murder. Where is the competent, credible evidence that this was a sexually oriented offense? Consequently, I concur with the majority opinion.